UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| IN RE APPLICATION OF THE UNITED STATES OF AMERICA FOR AN ORDER PURSUANT TO 18 U.S.C. § 2703(d) FOR RELEASE OF SUBSCRIBER INFORMATION AND ACCOUNT RECORDS FOR EMAIL ADDRESS ▓▓▓▓▓▓▓▓▓▓▓▓▓ | Docket no. 1:21-mc-28-AJ<br><br>**Filed Under Seal – Level II** |

## APPLICATION OF THE UNITED STATES
## FOR AN ORDER PURSUANT TO 18 U.S.C. § 2703(d)

The United States of America, moving by and through John Farley, Acting United States Attorney, respectfully submits under seal this *ex parte* application for an Order pursuant to 18 U.S.C. § 2703(d). The proposed Order would require Oath Holdings Inc. (Yahoo) an electronic communication and/or remote computing service provider located in Sunnyvale, California, to disclose certain records and other information pertaining to the email account ▓▓▓▓▓▓▓▓ ("subject account"), as described in Part I of Attachment A. The records and other information to be disclosed are described in Part II of Attachment A to the proposed Order. In support of this application, the United States asserts:

LEGAL BACKGROUND

1. Yahoo is a provider of an electronic communications service, as defined in 18 U.S.C. § 2510(15), and/or a remote computing service, as defined in 18 U.S.C. § 2711(2). Accordingly, the United States may use a court order issued under § 2703(d) to require Yahoo to disclose the items described in Part II of Attachment A. *See* 18 U.S.C. § 2703(c).

2. This Court has jurisdiction to issue the proposed Order because it is "a court of competent jurisdiction," as defined in 18 U.S.C. § 2711. *See* 18 U.S.C. § 2703(d). Specifically,

the Court is a district court of the United States that has jurisdiction over the offense being investigated. *See* 18 U.S.C. § 2711(3)(A)(i).

3. A court order under § 2703(d) "shall issue only if the governmental entity offers specific and articulable facts showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d). Accordingly, based on information provided to me by Special Agent Sara Albert of the Department of Defense, Defense Criminal Investigative Service, I hereby set forth the following specific and articulable facts showing that there are reasonable grounds to believe that the records and other information described in Part II of Attachment A are relevant and material to an ongoing criminal investigation.

## THE RELEVANT FACTS

4. The Defense Criminal Investigative Service, Boston Resident Agency, along with the Office of Export Enforcement, Boston Field Office, Homeland Security Investigations, Manchester, NH Resident Office, and the United States Attorney's Office for the District of New Hampshire have been investigating officers and employees of Sig Sauer, Inc. of Newington, New Hampshire, and ▓▓▓▓▓▓▓▓ of Singapore, and ▓▓▓▓▓▓▓▓ of Indonesia, along with related individuals and entities in Indonesia and Singapore, since late 2017. The investigation has focused on the activities of Amaro Goncalves, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓ and others regarding the sale of firearms and accessories to government end users in Indonesia. The investigation has focused on possible violations of the Arms Export Control Act (22 U.S.C. § 2778), International Emergency Economic Powers Act (50 U.S.C. § 1705), wire fraud (18 U.S.C. § 1343), money laundering (18 U.S.C. § 1956), and the Travel Act (18 U.S.C. § 1952).

2

5. Sig Sauer, Inc., is a firearms and accessories manufacturer headquartered at 72 Pease Blvd, Newington, NH. It is a foreign profit corporation registered in Delaware and a wholly owned subsidiary of Sig Sauer, US Holding LP, headquartered at 18 Industrial Drive, Exeter, NH.

6. Beginning in late 2015, Sig Sauer, Inc. of Newington, NH began to export products to Indonesia through a partner company calling itself ▮▮▮▮ of Singapore. According to documents and testimony, Sig Sauer and ▮▮▮▮ have a "buy-resell" relationship wherein Sig Sauer sells their products to ▮▮▮▮ which in turn sells the products to a final user, marking up their sales to provide for a profit. Between December 2015 and June of 2018, sales from Sig Sauer to ▮▮▮▮ totaled in excess of 27 million United States Dollars.

7. Sig Sauer, ▮▮▮▮ and related companies control the market in Indonesia for Sig Sauer's small arms, optics, and accessories, allowing ▮▮▮▮ to mark up its prices to the Indonesian government by as much as 600%. In 2016 and 2017, ▮▮▮▮ and related companies appear to have paid over $700,000 in illegal kickbacks to Amaro Goncalves, Sig Sauer's Vice President for Global Defense Sales. ▮▮▮▮ was the signatory for ▮▮▮▮ on Sig Sauer's representative agreements with ▮▮▮▮ ▮▮▮▮ and Goncalves communicated repeatedly about the kickback payments in 2016 and 2017. Also, members of the Sig Sauer Global Defense Sales team have taken actions to protect the monopoly held by their partner in Indonesia, and to obscure from Sig Sauer legal, compliance, and accounting staff the true identity of their representative in Indonesia.

8. The investigation has identified at least ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ of Indonesia as aliases/nominees for ▮▮▮▮ Also

3

identified are ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and ▮▮▮▮▮▮▮▮▮▮▮ as the Singaporean companies utilized as shell companies by ▮▮▮▮▮▮▮▮▮. These companies have listed as directors ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and others. The U.S. investigation has not uncovered any evidence showing that these individuals are involved in any of the actual business of ▮▮▮▮▮▮▮▮ beyond providing a Singaporean national as a figurehead.

9. Pursuant to a number of grand jury subpoenas, investigators have reviewed e-mail communications between ▮▮▮▮ and Sig Sauer. On June 2, 2016, ▮▮▮▮ using the "subject account", sent an email to Goncalves confirming information previously sent that day by Goncalves. The email is signed by ▮▮▮▮.

10. Goncalves has taken affirmative steps to insulate ▮▮▮▮▮▮▮▮ from any competition. In March 2016, he sent an e-mail to ▮▮▮▮▮▮▮ a Sig employee asking about an e-mail "from ▮▮▮ regarding working in Indonesia". This likely refers to ▮▮▮▮▮▮ a prior employee of ▮▮▮▮▮▮ replied that it was a conversation he had with ▮▮▮▮ at SHOT show wherein ▮▮▮▮ asserted to ▮▮▮▮ that "he needs to ensure that ▮▮▮▮▮▮ and ▮▮ were informed on what he was into/doing, and that we would not go against our established in country partner." Goncalves subsequently forwarded this e-mail to ▮▮▮▮ at ▮▮▮▮▮▮▮▮ and ▮▮▮ that same day.

11. On August 8, 2016 Goncalves sent ▮▮▮▮ and copied ▮▮▮▮ at ▮▮▮▮▮▮▮▮ a letter signed by ▮▮▮▮▮▮▮▮▮▮▮ Global Defense Sales at Sig Sauer which reads: "SIG SAUER, Inc. would like to take the opportunity to confirm that ▮ ▮▮▮▮▮▮▮ of Jakarta, Indonesia in an unknown entity. We have no record of any past

4

relationship with ▆▆▆▆▆▆▆▆▆▆▆) nor are there any current activities between SIG SAUER, Inc. and ▆▆▆▆▆▆▆▆▆▆▆."

## REQUEST FOR ORDER

12. The facts set forth in the previous section show that there are reasonable grounds to believe that the records and other information described in Part II of Attachment A are relevant and material to an ongoing criminal investigation. Specifically, these items will help the United States to identify and locate the individual(s) who are utilizing the subject account, and to determine the nature and scope of their activities. Accordingly, the United States requests that Yahoo be directed to produce all items described in Part II of Attachment A to the <u>proposed Order</u>.

Respectfully submitted,

JOHN J. FARLEY
Acting United States Attorney
District of New Hampshire

By:    <u>/s/ John S. Davis</u>
      John S. Davis
      Assistant U.S. Attorney